**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>     Plaintiff-Applicant,<br><br>  v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>     Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>ANDREW H. COHEN,<br><br>     Defendant. | Adv. Pro. No. 10-04311 (SMB) |

## REVISED JOINT PRETRIAL ORDER

   Plaintiff Irving H. Picard (the "Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendant Andrew H. Cohen ("Mr. Cohen," and together with the Trustee, the "Parties") have conferred among themselves and with the Court pursuant to Federal Rule of Civil Procedure 16, made applicable herein by Federal Rule of Bankruptcy

Procedure 7016, and the following statements, directions, and agreements are adopted as the Revised Joint Pretrial Order herein.

## I.  NATURE OF THE CASE

This adversary proceeding arises from a Ponzi scheme perpetrated by Madoff through the investment advisory business of BLMIS (the "Investment Advisor" business).  On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violating numerous criminal securities statutes.  On the same day, the United States Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against BLMIS and Madoff.  On December 15, 2008, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"), the Trustee was appointed as trustee for the liquidation of the business of BLMIS under the Securities Investor Protection Act ("SIPA"), and the District Court removed the combined action (the "Liquidation Proceeding") to this Court.

On November 26, 2010, the Trustee brought this adversary proceeding against Mr. Cohen, a former employee of BLMIS, to avoid and recover fraudulent transfers totaling $1,143,461 allegedly received by Mr. Cohen in connection with the Investment Advisory account (No. 1C1219) that he held at BLMIS (the "Account").  On June 13, 2011, Mr. Cohen answered the Trustee's Complaint, and asserted a counterclaim against BLMIS for fraud and breach of fiduciary duty, wherein he alleged that BLMIS improperly caused him to invest with its Investment Advisory business and then issued account statements misrepresenting the value of his investment.

On March 14, 2012, Mr. Cohen moved to withdraw the reference that had been made to this Court on several issues, including:  (i) whether he is entitled to protection under the safe harbor provision of 11 U.S.C. § 546(e) of the United States Bankruptcy Code ("Section

546(e)"[1]); (ii) whether the Trustee improperly seeks to avoid transfers that BLMIS made in satisfaction of antecedent debt owed by BLMIS to Mr. Cohen; and (iii) whether this Court has the constitutional and statutory authority to adjudicate the Trustee's avoidance claims against Mr. Cohen. Through several consent orders entered by the District Court, Mr. Cohen's motion was consolidated with hundreds of other similar motions in order to allow the District Court to decide each of the issues described above on a consolidated basis.[2]

On April 27, 2012, the District Court held that Section 546(e) applies in this and the other consolidated adversary proceedings, and dismissed all claims asserted by the Trustee therein except those made pursuant under Sections 548(a)(1)(A) and 550(a). *Picard v. Greiff*, 476 B.R. 715 (S.D.N.Y. 2012) (the "Safe Harbor Decision"). On January 4, 2013, the District Court ruled on the *Stern v. Marshall* issue, and held that although the Bankruptcy Court generally lacks the authority to enter final judgment on the Trustee's avoidance actions, "whenever the Bankruptcy Court must resolve a § 502(d) claim brought by the Trustee, it may also finally decide avoidance actions to the extent that those actions raise the same issues as the § 502(d) claim and thus would 'necessarily' be resolved by it." *SIPC v. BLMIS*, 490 B.R. 46, 55 and 58 (S.D.N.Y. 2013) (the "*Stern v. Marshall* Decision"). In those actions where it cannot enter final judgment, the District Court commanded the Bankruptcy Court "to hear the [avoidance action] in the first instance and recommend proposed findings of fact and conclusions of law" to the District Court. *Id.* at 58.[3]

---

[1] Further references to the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, will be made in like fashion.

[2] *See* Order, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. April 13, 2012) (No. ECF 4) (relating to the *Stern v. Marshall* issue); Consent Order Granting Certification Pursuant to Fed. R. Civ. P. 54(b) for Entry of Final Judgment Dismissing Certain Claims and Actions, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 109) (relating to the Section 546(e) issue); Order, *SIPC v.BLMIS*, No. 12 MC 115 (S.D.N.Y. May 16, 2012) (ECF No. 107) (relating to the antecedent debt issue).

[3] Moreover, the District Court "declined to withdraw the reference of these cases to the Bankruptcy Court 'for cause shown' before the Bankruptcy Court has issued appropriate findings of fact and conclusions of law." *Id.* at 58.

Finally, on October 15, 2013, the District Court held that BLMIS customers are not entitled to retain avoidable transfers they received from BLMIS under Section 548(c) because such transfers did not constitute the "satisfaction of . . . antecedent debt" within the meaning of the statute. *SIPC v. BLMIS*, 499 B.R. 416, 423 (S.D.N.Y. 2013) (the "Antecedent Debt Decision").

After the District Court issued the Safe Harbor Decision, the Parties proceeded with discovery on the Trustee's sole remaining claim, Count One of the Complaint, and Mr. Cohen's counterclaim. During discovery, Mr. Cohen maintained that given the passage of time since he opened the Account, he is unable to either admit or deny the existence of many of the transfers the Trustee maintains he made or received in connection with the Account. The Parties concluded all discovery in July 2014. Earlier this year, the Parties conducted a mediation before Keith N. Costa that was unsuccessful.

During the recent pretrial conference on July 16, 2015, Mr. Cohen advised the Court that he intended to dismiss his counterclaim and that he was waiving his right to have the Trustee's fraudulent transfer claim tried before a jury. On August 27, 2015, the Trustee and Mr. Cohen jointly filed a stipulation with this Court wherein they agreed to the dismissal of Mr. Cohen's counterclaim.

## II.   BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY COURT MAY ENTER FINAL ORDER OR JUDGMENT

The Trustee commenced this adversary proceeding in this Court before which the Liquidation Proceeding is also pending. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 15 U.S.C. § 78eee(b)(2)(A) and (b)(4), and Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing Order of Reference, No. M 10-468, 12 Misc. 0032 (S.D.N.Y. Jan. 31, 2012). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

Given the dismissal of Mr. Cohen's counterclaim, the Parties agree that although this Court lacks jurisdiction to adjudicate the Trustee's avoidance claim, the Court may hear this matter in the first instance and recommend proposed findings of fact and conclusions of law to the District Court. At this time, Mr. Cohen does not consent to the jurisdiction of this Court to adjudicate and enter final judgment in this proceeding.

### III. STIPULATED FACTS

During the relevant period in this proceeding, BLMIS was headquartered in the Lipstick Building, located at 885 Third Avenue, New York, New York and operated its Investment Advisory business in that location. Over this same period, BLMIS was registered with the Securities and Exchange Commission as a broker-dealer under section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o*(b). Between 1991 and 2000, Mr. Cohen was employed by BLMIS as a trader on its market-making desk. In early 1996, Mr. Cohen opened an Investment Advisory account at BLMIS (again, the "Account"). The Account was assigned account number 1C1219. Mr. Cohen received monthly account statements and quarterly portfolio management reports for the Account. Over the years, Mr. Cohen provided money to BLMIS to invest in the Account and also withdrew funds from the Account. Mr. Cohen continued to hold the Account through the time BLMIS ceased operations on or about December 11, 2008. Prior to BLMIS's collapse, Mr. Cohen did not have any knowledge or notice of any wrongdoing or fraudulent intent on the part of BLMIS.[4]

---

[4] As discussed in Sections VII and X below, Mr. Cohen intends to proffer certain evidence at trial relating to tax payments that he made and tax refunds he received in connection with the Account (the "Tax Evidence"). The Trustee objects to the Tax Evidence because it is irrelevant to the Trustee's avoidance claim. In the event that the Court rules that the Tax Evidence is relevant, Mr. Cohen intends to offer a declaration from his accountant, Paul Speece, and the Trustee consents to its admission subject to his objection.

**IV.     PARTIES' CONTENTIONS**

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties.

    **A.**     The Trustee's Contentions

    1.     For decades, Madoff operated a fraudulent scheme through BLMIS. BLMIS never executed any of the trades reported on the monthly account statements for the Account. Throughout the two-year period preceding the Filing Date, BLMIS was insolvent.

    2.     Over the life of the Account, Mr. Cohen invested a total of $2,921,539 in the Account and withdrew a total of $4,065,000 from the Account. Mr. Cohen therefore withdrew $1,143,461 more from the Account than he invested in the Account, and those withdrawals, in excess of the principal invested by Mr. Cohen, constituted fictitious profits from the Ponzi scheme (the "Transfers"). All of the Transfers took place during the two-year period preceding the Filing Date.

    3.     The Transfers are all avoidable under Section 548(a)(1)(A) of the Bankruptcy Code. BLMIS made each and every one of the Transfers with the actual intent to hinder, delay or defraud some or all of its then existing and/or future creditors. *See*, *e.g.,* Omnibus Motion Decision at 22 ("Once it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent. *Picard v. Merkin (In re BLMIS)*, No. 11 MC 0012 (KMW), 2011 WL 3897970, at *4 (S.D.N.Y. Aug. 31, 2011); *Christian Bros.* [*High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*], 439 B.R. [284], 306 n.19 [(S.D.N.Y. 2010)]; *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),* 397 B.R. 1, 8 (S.D.N.Y. 2007).").

    4.     Mr. Cohen did not provide any value, within the meaning of Section 548(c), in return for any of the Transfers, because each Transfer consisted of fictitious profits from the

Ponzi scheme and therefore was nothing more than the money of other BLMIS customers. *See* Antecedent Debt Decision at 425-26; Omnibus Motion Decision at 14-21.

5. Pursuant to Section 550(a), the Trustee is entitled to recover the Transfers, or the value thereof, from Mr. Cohen. The Trustee is additionally entitled to prejudgment interest on each of the Transfers. *See, e.g., Savage & Associates, P.C. v. Mandl (In re Teligent Inc.)*, 380 B.R. 324, 344 (2008) ("The award of pre-judgment interest is discretionary, and absent a sound reason to deny it, it should be awarded."); Michael S. Knoll, *A Primer on Prejudgment Interest*, Tex. L. Rev., Vol. 75, No. 2 (1997) (awarding of prejudgment interest promotes settlement and prevents unjust enrichment).

**B.**    Mr. Cohen's Contentions[5]

1. The transfers made by BLMIS to Mr. Cohen did not constitute conveyances made with the requisite fraudulent intent required by Section 548(a)(1); the Ponzi scheme presumption does not apply because BLMIS was not a Ponzi scheme.

2. The transfers made by BLMIS to Mr. Cohen were received in good faith and for value pursuant to Section 548(c). Accordingly, Mr. Cohen has not been stripped of: his rights which include his right to assert offsets in the form of common-law claims for damages arising out of taxes paid, but not recovered on phantom income; his loss of investment opportunity of the principal invested with BLMIS; prejudgment interest on any claims pursuant to CPLR 5001; his claims for securities fraud pursuant to Section/Rule 10b5 of the Securities Exchange Act of 33/34; and his claims under New York's Article 8 of the U.C.C. for value of the account statements provided by BLMIS.

---

[5] Mr. Cohen acknowledges that many of the following contentions may have already been rejected by the District Court as well as by this Court in other proceedings. Although this Court may not be inclined to – and perhaps cannot – revisit them at trial, Mr. Cohen sets them forth below, out of an abundance of caution, to preserve his ability to raise them on appeal.

3. There is no basis for the application of CPLR 5001 for prejudgment interest insofar as the Trustee's claims under New York State law have been dismissed pursuant to Section 546(e).

4. There is a compelling basis to deny the award of any prejudgment interest given: (i) Mr. Cohen's innocence and lack of knowledge of fraud at BLMIS in the receipt of funds from BLMIS; (ii) the fact that there existed, until recently, largely unsettled questions of law that constituted a good faith dispute as to Mr. Cohen's liability; (iii) the *sui generis* nature of the case coupled with largely unsettled questions of law requiring review by the District and Circuit courts that led to a delay in any proceedings; as well as (iv) the Trustee's continued collateral challenges of adverse decisions that is the most responsible factor for the delay in the proceedings. *See Wickham v. Local Union No. 3*, 966 F.2d 831, 834 (2nd Cir. 1992).

5. The application of Sections 546(e) and 548(a) does not permit the Trustee to avoid and/or apply against Mr. Cohen's BLMIS account any transfer prior to the two-year statute of limitation under Section 548.

6. The Trustee lacks standing to bring these claims on behalf of the BLMIS estate insofar as the estate did not have interest in the funds at issue as they are held by a fiduciary for a customer's benefit and under the doctrine of *in pari delicto.*

7. The Trustee lacks authority under SIPA §78fff-2(c)(3) to pursue these avoidance actions.

8. The Trustee's action violates Mr. Cohen's due process due to the Trustee's financial interest in the outcome.

9. The Trustee's calculation of "clawback exposure" violates Mr. Cohen's due process rights.

10. The Trustee's calculation of "clawback exposure" fails to account for the time value of Mr. Cohen's deposits, including both interest / time-value of the funds as well as an adjustment for the "real" or constant dollar value of the funds at the time of investment.

## V. ISSUES TO BE TRIED

The parties anticipate that the following issues will be tried before this Court:

1. Whether Madoff operated a Ponzi scheme through the Investment Advisory business of BLMIS;

2. Whether BLMIS made transfers to Mr. Cohen, during the two-year period preceding the Filing Date in connection with the Account, with the actual intent to hinder, delay or defraud some or all of its then existing and/or future creditors;

3. The amount of fraudulent transfers received by Mr. Cohen during the two-year period preceding the Filing Date;

4. The extent to which any transfers made by BLMIS to Mr. Cohen were made for value and in good faith pursuant to Section 548(c);

5. Whether Mr. Cohen is entitled to any type of setoff with respect to the Trustee's fraudulent transfer claim; and

6. Whether, and to what extent, the Trustee should be awarded prejudgment interest.

## VI. THE TRUSTEE'S ANTICIPATED TRIAL EXHIBITS

The Trustee anticipates offering the following exhibits[6] during his direct case-in-chief:

PX1. Customer agreements, trading authorizations, and options agreements between

BLMIS and Mr. Cohen relating to the Account (account file maintained by

BLMIS for the Account; Mr. Cohen's document production in these proceedings);

---

[6] A description of each exhibit is provided followed by, where applicable, a parenthetical identifying the source of the document or documents.

PX2. Monthly customer statements for the Account from January 1996 through November 2008 (books and records maintained by BLMIS relating to its Investment Advisory business);

PX3. Monthly statements for the Account from June 2002 through November 2008 (Mr. Cohen's document production);

PX4. Portfolio Management Reports for the Account (Mr. Cohen's document production);

PX5. Portfolio Management Reports for the Account (books and records maintained by BLMIS relating to its Investment Advisory business);

PX6. Written requests made by Mr. Cohen to withdraw funds from the Account (account file maintained by BLMIS for the Account);

PX7. BLMIS trade, deposit, and withdrawal confirmations relating to the Account (books and records maintained by BLMIS relating to its Investment Advisory business);

PX8. Cancelled checks from JPMorgan Chase account nos. xxxxxxxxxx1509 and xxxxx1703 relating to the Account (books and records maintained by BLMIS relating to its Investment Advisory business);

PX9. Cancelled checks from JPMorgan Chase account nos. xxxxxxxxxx1509 and xxxxx1703 relating to the Account (records produced by JPMorgan Chase in the Liquidation Proceeding);

PX10. Account statements for JPMorgan Chase Bank N.A. ("JPMorgan Chase") account no. xxxxx1703 evidencing funds transferred by Mr. Cohen by check or wire transfer to BLMIS for investment in the Account and/or Mr. Cohen's withdrawal

of funds from the Account by wire transfer (records produced by JPMorgan Chase in the Liquidation Proceeding; books and records maintained by BLMIS relating to its Investment Advisory business);

PX11. Account Statements from Bank of America N.A. account no. xxxxxxxx6774 evidencing Mr. Cohen's receipt of funds he withdrew from the Account (records produced by Bank of America N.A. in this proceeding);

PX12. Complaint filed by the Trustee against Mr. Cohen;

PX13. Answer to Complaint, Affirmative Defenses & Counterclaims of Andrew Cohen;

PX14. Trustee Irving H. Picard's First Set of Requests for Admission;

PX15. Defendant Andrew Cohen's Responses to Plaintiff's Request for Admission;

PX16. Trustee Irving H. Picard's First Set of Interrogatories;

PX17. Defendant Andrew Cohen's Responses to Plaintiff's First Set of Interrogatories;

PX18. Expert Report of Lisa M. Collura, CPA, CFE, CFF, entitled "Proof of Transfers To the Defendant," prepared in connection with this proceeding and dated June 12, 2014, together with the exhibits thereto (the "Collura Report");

PX19. All documents identified in the Collura Report;

PX20. Expert Report of Bruce G. Dubinsky, MST, CPA, CFE, CVA, CFF, MAFF, dated August 20, 2013, together with the exhibits thereto (the "Dubinsky Report");

PX21. All documents identified and/or relied upon in the Dubinsky Report;

PX22. Expert Report of Matthew B. Greenblatt, CPA/CFF, CFE, Senior Managing Director, FTI Consulting, Inc., entitled "Methodology for the Principal Balance Calculation" and dated November 15, 2012, together with the exhibits thereto (the "Greenblatt Methodology Report");

PX23.  All documents identified in the Greenblatt Methodology Report;

PX24.  Expert Report of Matthew B. Greenblatt, CPA/CFF, CFE, Senior Managing Director, FTI Consulting, Inc., entitled "Principal Balance Calculation as Applied to Andrew H. Cohen" and dated June 12, 2014, together with the exhibits thereto (the "Greenblatt Principal Balance Report");

PX25.  All documents identified in the Greenblatt Principal Balance Report; and

PX26.  The account file maintained by BLMIS relating to the Account.

The Trustee reserves the right to rely upon and introduce any of Mr. Cohen's exhibits, identified in Section VII below, and/or additional exhibits on the issue of whether the Trustee is entitled to an award of prejudgment interest.

## VII. MR. COHEN'S ANTICIPATED TRIAL EXHIBITS[7]

Mr. Cohen anticipates offering the following exhibits during his direct case-in-chief:

DX1.  Andrew Cohen's 1995 personal tax returns;

DX2.  Andrew Cohen's 1996 personal tax returns;

DX3.  Andrew Cohen's 1997 personal tax returns;

DX4.  Andrew Cohen's 1998 personal tax returns;

DX5.  Andrew Cohen's 1999 personal tax returns;

DX6.  Andrew Cohen's 2000 personal tax returns;

DX7.  Andrew Cohen's 2001 personal tax returns;

DX8.  Andrew Cohen's 2002 personal tax returns;

DX9.  Andrew Cohen's 2003 personal tax returns;

DX10. Andrew Cohen's 2004 personal tax returns;

---

[7] The exhibits listed below relate to the Tax Evidence that Mr. Cohen intends to proffer at trial. In the event that the Court concludes that the Tax Evidence is relevant, Mr. Cohen intends to introduce a declaration from Paul Speece which will include reference to the exhibits.

    DX11. Andrew Cohen's 2005 personal tax returns;

    DX12. Andrew Cohen's 2006 personal tax returns;

    DX13. Andrew Cohen's 2007 personal tax returns;

    DX14. Andrew Cohen's 2008 personal tax returns;

    DX15. Summary evidence of taxes paid by Mr. Cohen; and

    DX16. Summary of legal fees incurred by Mr. Cohen in defense of action.

Mr. Cohen reserves the right to rely upon and introduce any of the Trustee's exhibits, identified in Section VI above in defense of the Trustee's claim

### VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

The parties stipulate to the authenticity, under Federal Rule of Evidence 803(6), of all of their respective trial exhibits identified in Sections VI and VII above.

### IX. THE TRUSTEE'S NON-EXPERT WITNESS

During his direct case-in-chief, the Trustee anticipates calling the following witness:

1. Mr. Cohen

### X. MR. COHEN'S NON-EXPERT WITNESSES

During his case-in-chief, Mr. Cohen anticipates calling the following witness:

1. Mr. Cohen.

And anticipates offering a declaration from the following witness:

1. Paul Speece who will testify as to Mr. Cohen's payments made to applicable tax authorities on account of the gains reported by BLMIS.

### XI. THE TRUSTEE'S EXPERT WITNESSES

During his direct case-in-chief, the Trustee will submit declarations from the following expert witnesses and will also make these witnesses available for examination:

1. Lisa M. Collura, who will testify on the subject of the analysis she performed regarding the Trustee's proof of transfers to Mr. Cohen as set forth in her expert report dated June 12, 2014;

2. Bruce G. Dubinsky, who will testify regarding the Trustee's proof of the Ponzi scheme, BLMIS's insolvency, and other issues as set forth in his expert report dated August 20, 2013; and

3. Matthew B. Greenblatt, who will testify regarding (a) the Trustee's methodology for his principal balance calculations for all BLMIS investment advisory accounts as set forth in his expert report dated November 15, 2012, and (b) the principal balance calculation as applied to the Account as set forth in his expert report dated June 12, 2014.

## XII. MR. COHEN'S EXPERT WITNESSES

Mr. Cohen will not call any expert witnesses at trial.

## XIII. RELIEF SOUGHT BY THE TRUSTEE

The Trustee seeks to avoid and recover from Mr. Cohen $1,143,461.00 in fraudulent transfers, or the value thereof, pursuant to, *inter alia*, §§ 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code and various provisions of SIPA, including § 78fff-2(c)(3). The Trustee seeks, pursuant to federal common law and/or New York Civil Practice Laws and Rules §§ 5001 and 5004, prejudgment interest on the avoidable transfers. Finally, the Trustee seeks such other and further relief as the Court deems just, proper and equitable.

## XIV. RELIEF SOUGHT BY MR. COHEN

Mr. Cohen seeks dismissal of the Trustee's remaining avoidance claim. Mr. Cohen also seeks such other and further relief as the Court deems just, proper and equitable.

## XV.  ESTIMATED TIME OF TRIAL

This Court scheduled the trial of this matter to commence at 10:00 a.m. on October 14, 2015 and continue over the course of the next two days, October 15 and 16, if necessary.  The Trustee estimates it will take two to six hours to present his direct case-in-chief at trial depending upon the extent to which Mr. Cohen examines the Trustee's witnesses.  Mr. Cohen estimates that it will take two to six hours to present his direct case-in-chief at trial.

Dated: August 27, 2015
       New York, New York

**BAKER & HOSTETLER LLP**

By: /s/ *Nicholas J. Cremona*
45 Rockefeller Plaza
New York, New York 10111
Telephone:  212.589.4200
Facsimile:  212.589.4201
David J. Sheehan
Email:  dsheehan@bakerlaw.com
Nicholas J. Cremona
Email:  ncremona@bakerlaw.com
Ona T. Wang
Email:  owang@bakerlaw.com
Torello H. Calvani
Email:  tcalvani@bakerlaw.com

and

1900 East Ninth Street
Cleveland, Ohio 44114
Telephone:  216.621.0200
Facsimile:  216.696.0740
James H. Rollinson
Email:  jrollinson@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard,*
*Trustee for the liquidation of Bernard L.*
*Madoff Investment Securities LLC and the*
*consolidated estate of Bernard L. Madoff*

**LEWIS & McKENNA**

By: /s/ *Paul Z. Lewis*
82 E. Allendale Road
Saddle River, New Jersey 07458
Telephone:  201.934.9800
Facsimile:  201.934.8681
Paul Z. Lewis
Email:  plewis@lewismckenna.com
Gregory S. Goett
Email:  ggoett@lewismckenna.com

*Attorneys for Defendant Andrew Cohen*

- 15 -

Dated: August 28th, 2015

**IT IS SO ORDERED:**

                                            **/s/ STUART M. BERNSTEIN**
                                              **STUART M. BERNSTEIN**
                                              **United States Bankruptcy Judge**