**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (SMB) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW H. COHEN, <br><br> Defendant. | Adv. Pro. No. 10-04311 (SMB) |

<u>**PLAINTIFF IRVING H. PICARD'S
REPLY TO DEFENDANT ANDREW H. COHEN'S POST-TRIAL PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

Pursuant to the Court's Post-Trial Scheduling Order (ECF No. 63), Plaintiff Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, and the substantively consolidated estate of Bernard L. Madoff, by and through his undersigned counsel, hereby submits this reply to Defendant Andrew H. Cohen's Post-Trial Proposed Findings of Fact

and Conclusions of Law filed on December 9, 2015 (ECF No. 74) in connection with the trial in the above-captioned adversary proceeding (the "Adversary Proceeding") against Defendant Andrew H. Cohen ("Mr. Cohen").

### REPLY TO MR. COHEN'S PROPOSED FINDINGS OF FACT

This Adversary Proceeding was tried before this Court on a stipulated factual record. In his Proposed Findings of Fact, Mr. Cohen often loses sight of this fact. For instance, he apparently does not wish this Court to find that BLMIS was operating a Ponzi scheme despite stipulating to this particular fact. *See* Second Revised Joint Pretrial Order ("JPTO") at 8 ("BLMIS was operating a Ponzi scheme through its IA Business"). Mr. Cohen also stipulated to the admission of the expert report of Bruce Dubinsky into evidence (PX-20A) and even cites to the report in his Proposed Findings of Fact (*see* paragraph 8 thereof), but fails to acknowledge Mr. Dubinsky's conclusion, formed after an exhausting review of BLMIS records and materials from other sources, that all of the trades reported in the statements for the Investment Advisory accounts were pure fiction. *See* Trustee's Proposed Proposed Findings of Fact at ¶ 8 (citing to PX-20A-36-124 (¶¶ 82-289)).

Mr. Cohen additionally attempts to slip in a few "facts" which are not part of the record here. For example, beyond asking that the Court find that he was employed by BLMIS as a trader on its market-making desk between 1991 and 2000 — a fact to which the parties stipulated (*see* JPTO at 6), he adds that he "had no role in the Investment Advisory operation." *See* Mr. Cohen's Proposed Findings of Fact at ¶ 11. Similarly, he suggests that the Court find that his "withdrawals were made following receipt of and in reliance upon account balances shown in the Madoff Securities Account Statements." *Id.* at ¶ 21. Although Mr. Cohen has not given the Trustee a reason to challenge these added "facts," there is nothing in the record to substantiate them and they therefore should not be included as a finding of fact.

Finally, although Mr. Cohen acknowledges the total amount of funds he deposited into his BLMIS account (*i.e.,* $2,921,539) and the total amount he withdrew therefrom (*i.e.,* $4,065,000), *see* Mr. Cohen's Proposed Findings of Fact at ¶¶ 19, 20, he seemingly does not want the Court to find, as a factual matter, the difference between these totals (*i.e.,* $1,143,461) despite stipulating to this fact. *See* JPTO at 7 ("Of the withdrawals from the Account, a total of $1,143,461 was withdrawn by Mr. Cohen in excess of the principal, representing fictitious profits."). He likewise does not wish to acknowledge that he further stipulated that: (i) all transfers in excess of principal "took place within the two-year period prior to December 11, 2008," (ii) he "received" each of these transfers, (iii) each of these transfers "constituted an interest in BLMIS in property within the meaning of Section 101(54) of the Bankruptcy Code and § 78fff-2(c)(3) of SIPA," and (iv) each of these transfers was made by BLMIS "with the actual intent to hinder, delay or defraud some or all of BLMIS's then existing and/or future creditors within the meaning of Section 548(a)(1)(A) of the Bankruptcy Code." *See* JPTO at 7-8; Trustee's Proposed Findings of Fact at ¶¶ 35-38.

Before turning to Mr. Cohen's Proposed Conclusions of Law, the Court should note that Mr. Cohen does not touch upon, in either in his Proposed Findings of Fact or in his Proposed Conclusions of Law, several contentions he makes in the Second Revised Joint Pretrial Order relating to standing (Contentions Nos. 3 & 4) and due process (Contention Nos. 5 & 6). *See* JPTO at 10. Given their absence in Mr. Cohen's post-trial submission, the Trustee will not address them here as they have been deemed waived.[1] To the extent the Court is inclined to still

---

[1] *See e.g., United States v. Harrell,* 368 F.3d 141, (2d Cir. 2001) (an issue is subject to appellate review "only if it was 'pressed or passed upon below.'" (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)); *Pounds Photographic Labs, Inc. v. Noritsu Am. Corp.,* 818 F.2d 1219, 1226 (5th Cir. 1987) (error not raised in post-trial motion is waived).

entertain them, the Trustee refers the Court to the Trustee's Proposed Conclusions of Law at pages 12 to 17 and pages 28 to 29 (ECF No. 71).[2]

## REPLY TO MR. COHEN'S PROPOSED CONCLUSIONS OF LAW

### I. Mr. Cohen Has No Standing to Re-Argue the *Antecedent Debt Decision*

In his Proposed Conclusions of Law, Mr. Cohen fails to acknowledge his participation in the withdrawn proceedings wherein the District Court extensively considered the issue of antecedent debt and ruled that as a matter of law, Mr. Cohen, who was a party to those proceedings, are not entitled to retain avoidable transfers they received from BLMIS under Section 548(c) because such transfers do not constitute the "satisfaction of . . . antecedent debt" within the meaning of the statute. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.),* 499 B.R. 416, 424 (S.D.N.Y. 2013) (the "*Antecedent Debt Decision*"); *see also Picard v. Shapiro,* Adv. Pro. No. 10-05383 (SMB), 2015 WL 7568376, at *12-13 (Bankr. S.D.N.Y. Nov. 25, 2015) (ruling defendants' "value" arguments that the transfers satisfied the antecedent debts arising from their state and federal law claims were previously foreclosed by Judge Rakoff, stating that defendants "cannot collaterally attack Judge Rakoff's reference order in this Court.") (citing *generally Antecedent Debt Decision*, 499 B.R. 416).

This Court should not revisit the issues relating to antecedent debt raised by Mr. Cohen, which were disposed of by the District Court. As this Court previously stated, "[t]hose moving defendants that participated in the withdrawal of the reference of the antecedent debt/value issue

---

[2] In addition, the Trustee notes that Mr. Cohen attempts to incorporate by reference the "arguments and legal citations contained in filings submitted in the Madoff Securities liquidation and related adversary proceedings by the proposed intervenors." (Cohen Br. at 9). The Trustee reiterates his arguments in the letter from Nicholas J. Cremona, dated December 10, 2015 (ECF No. 78), and maintains his position that any brief or submission by the purported intervenors should be stricken from the record in this proceeding and disregarded as legal nullities. The Trustee requests that any portion of Mr. Cohen's Proposed Findings of Fact and Conclusions of Law that attempts to incorporate any such materials outside the record of this proceeding established at trial should likewise be stricken from this proceeding and disregarded.

- 4 -

have had their day in court and Judge Rakoff's decisions are law of the case. Judge Rakoff returned the proceedings to this Court 'for further proceedings consistent with [its] Opinion and Order.' This sounds like a mandate." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 466 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*") (quoting *Antecedent Debt Decision*, 499 B.R. at 430); *see also United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate rule 'compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court" (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Mr. Cohen is thus precluded from relitigating the *Antecedent Debt Decision* before this Court.

## II.    The *Antecedent Debt Decision* Remains Law Of The Case

Mr. Cohen attempts to evade the District Court's mandate by arguing that the *Antecedent Debt Decision* is no longer controlling law because the Second Circuit subsequently rendered an "intervening" decision in *Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Secs.*), 773 F.3d 411 (2d Cir. 2014) (the "*Section 546(e) Decision*"). Mr. Cohen fails to acknowledge that this Court previously considered and altogether rejected this very argument. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 469-70 (Bankr. S.D.N.Y. 2015) ("*Omnibus Good Faith Decision*"). The Court specifically determined that the *Antecedent Debt Decision* was <u>not</u> impacted by the Second Circuit because it "did not address the question of value." *Id.* at 469. It also did not disturb the general rule that a "trustee can recover fictitious profits because transferees in a Ponzi scheme do not give 'value' within the meaning of the Bankruptcy Code beyond what they pay into the scheme." *Id*. at 469-70. Thus, the *Section 546(e) Decision* "support[s] the general proposition that SIPA § 78fff–2(c)(3) is limited to granting a SIPA trustee the additional power to recover the transfers of customer property . . . It does not follow, however, that the defendants paid value in exchange for the

- 5 -

fictitious profits they received." *Id.* at 469.

As this Court explained further, "[f]ictitious profits are not profits at all but distributions of other people's money based on an arbitrary allocation of fraudulent bookkeeping entries. The [*Section 546(e) Decision*] did not address this rule and it remains the majority view." *Omnibus Good Faith Decision* at 470. Although the Second Circuit distinguished between the goals of SIPA and the Bankruptcy Code in the context of Section 546(e), "the two statutory regimes are not so easily separated with respect to other aspects of fraudulent transfer litigation. Unlike § 546(e), there is no clear statutory direction that the satisfaction of claims against the general estate provides value for the fraudulent transfer of fictitious profits from the deposits made by other customers."[3] *Id.*

This long-standing rule that fictitious profits do not constitute value has been upheld in SIPA liquidations as well as in non-SIPA bankruptcy proceedings. As this Court emphasized, "every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme are not 'for value.'" *Omnibus Good Faith Decision* at 462 (citing *Greiff*, 476 B.R. at 724);[4] *see also Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC),* 439 B.R. 284, 337 (S.D.N.Y.2010) ("[V]irtually every court to address the question has held unflinchingly that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.") (internal quotation marks and citations omitted); *Picard v. Cohmad Sec. Corp.* (*In re BLMIS*),

---

[3] Cohen also cites the Second Circuit's subsequent decision in *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) as intervening authority. (Cohen Br. at 14). However, this Court previously considered and rejected this argument for the same reasons asserted for the *Section 546(e) Decision*. *See Omnibus Good Faith Decision,* 531 B.R. at 468-70.

[4] *See e.g., Donell v. Kowell*, 533 F.3d 762, 771–72 (9th Cir.), *cert. denied*, 555 U.S. 1047 (2008); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir.), *cert. denied*, 516 U.S. 1028 (1995); and *Sender v. Buchanan (In re Hedged–Invs. Assocs., Inc.*), 84 F.3d 1286, 1290 (10th Cir.1996).

454 B.R. 317, 333 (Bankr. S.D.N.Y. 2011) ("[W]hen investors invest in a Ponzi scheme, any payments that they receive in excess of their principal investments can be avoided by the Trustee as fraudulent transfers."); *Gowan v. The Patriot Grp., LLC* (*In re Dreier LLP*), 452 B.R. 391, 440 n.44 (Bankr.S.D.N.Y.2011) ("The Court's conclusion that the Defendants did not provide 'reasonably equivalent value' for the payments in excess of principal is consistent with those courts that have held that investors in a Ponzi scheme are not entitled to retain the fictitious profits they received.").

Accordingly, the *Antecedent Debt Decision* is the controlling law of the case and the payment of fictitious profits does not satisfy any antecedent debts or provide "value" within the meaning of Bankruptcy Code § 548(c) and (d)(2)(A).

### III. All of Mr. Cohen's Remaining Contentions Must Be Rejected

Given that this Court, the District Court, and many other federal courts, have held that "[t]he Ponzi scheme participant does not provide any value to the debtor in exchange for the fictitious profits it receives," all of Mr. Cohen's remaining contentions are meritless. *Omnibus Good Faith Decision* at 463 (citing *Scholes,* 56 F.3d at 757). Indeed, in his Proposed Conclusions of Law, Mr. Cohen recycles arguments that were already examined, re-examined, and decided by both this Court and the District Court. With respect to Mr. Cohen's remaining contentions, the District Court previously determined that obligations, federal and state law claims, lost opportunity costs, consequential damages, and other remedies Mr. Cohen attempts to tack onto his principal balance amount are not relevant to the Trustee's recovery of the avoidable transfers from Mr. Cohen. *See Greiff*, 476 B.R. at 725 (holding "those transfers from Madoff Securities to defendants that exceeded the return of defendants' principal, *i.e.*, that constituted profits, were not 'for value'"). Nonetheless, the Trustee will briefly once again address the contentions raised by Mr. Cohen.

### A.   Neither the Uniform Commercial Code Nor Mr. Cohen's Account Statements Establish Enforceable Obligations[5]

Mr. Cohen asserts that the *Section 546(e) Decision* held that "Article 11 of New York's Uniform Commercial Code ("U.C.C.") constituted valid, existing obligations to Madoff Securities investors." (Cohen Br. at 15).  But nowhere is this actually stated or implied in the *Section 546(e) Decision*.  That decision centered on the Trustee's ability to avoid and recover certain transfers "made by a stockbroker, including payments made in connection with a securities contract and settlement payments," beyond the two year period preceding December 11, 2008.  *Section 546(e) Decision,* 773 F.3d at 416.  The only reference in the decision to the U.C.C. is made in the context of the definition of "settlement payment[s]" under Section 546(e), which was broadly construed by the Second Circuit to apply to "the transfer of cash or securities made to complete [a] securities transaction." *Id.* at 422 (quoting *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 333-34 (2d Cir. 2011) and citing N.Y. U.C.C. § 8–501(b)(1) & cmt. 2 (broker's written crediting of securities to a customer's account creates an enforceable securities entitlement)).  It does not follow that the U.C.C. created enforceable obligations to BLMIS customers that could serve as a defense under Section 548(c) in a SIPA liquidation.

In fact, the U.C.C. is state law and, to the extent it is inconsistent with SIPA, is preempted under the Supremacy Clause of the United States Constitution.  *See* U.S. Const., art.

---

[5] Because the Second Revised Joint Pretrial Order does not include any specific contention related to "the obligations that were owed by Madoff to Mr. Cohen . . . provided a defense under [Section] 548(c)" as he asserted during the trial before this Court on October 14, 2014, Trial Transcript at 12:5-12; 19:12-17, the Trustee maintains that Mr. Cohen has waived this contention.  A final pre-trial order "is not to be changed lightly" and "[t]hat which is not alleged in the Pre–Trial Order is generally deemed waived." *Vogelfang v. Riverhead Cnty. Jail*, No. 04 Civ. 1727 (SJF) (AKT), 2012 WL 1450560, at *11 (E.D.N.Y. Apr. 19, 2012) (citing *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796 (PKL), 2005 WL 1026515, at *6 (S.D.N.Y. May 2, 2005)).

VI, cl. 2; *Amer. Sur. Co. of N.Y. v. Sampsell*, 327 U.S. 269, 272 (1946) ("[F]ederal bankruptcy law, not state law, governs the distribution of a bankrupt's assets to his creditors."). Further, the Bankruptcy Code and SIPA both override the U.C.C. if the debtor's affairs are being administered in an insolvency proceeding. *See* U.C.C. § 8-503 cmt.1 (2009) (noting that "applicable insolvency law governs how the various parties having claims against the firm are treated").

As this Court previously recognized, "while claims and debts are usually based on state law rights, a federal interest may require a different result." *Omnibus Good Faith Decision,* 531 B.R. at 467. The principal purposes of SIPA are "to protect investors against financial losses arising from their broker's insolvency and protect the securities markets as a whole." *Id.* As a result, "interpreting value to include the satisfaction of claims against the general estate would deplete the resources available to satisfy the customers' net equity claims and other priority claims, and thereby undercut one of SIPA's principal goals." *Id.*

Mr. Cohen alternatively asserts that the account statements provided by BLMIS "established an enforceable legal obligation to Mr. Cohen at the time they were issued and constituted 'value' at the time the funds were withdrawn." (Cohen Br. at 15). However, the District Court ruled in *Greiff* and again in the *Antecedent Debt Decision,* that BLMIS's account statements did not constitute binding, enforceable obligations of BLMIS to its customers, such that the amounts reported thereon are not "antecedent debts" that BLMIS owed to its customers. In the *Antecedent Debt Decision*, the District Court unequivocally stated "the Court rejects defendants' contention that Madoff Securities' pre-reach-back-period account statements constitute binding obligations of Madoff Securities to its customers that the Trustee must avoid." 499 B.R. at 421, n.4. *See also Omnibus Good Faith Decision,* 531 B.R. at 476 n. 26. Likewise

in *Greiff,* the District Court found that the amounts reported on account statements were invalid and entirely unenforceable. 476 B.R. at 726. Such amounts therefore could not create valid obligations used to offset liability. *Id.* And though Mr. Cohen asserts otherwise, the *Section 546(e) Decision* did not change this result, as the Second Circuit made it clear that it still "would be 'absurd' to calculate customers' net equity using BLMIS's fictitious account statements, because that would 'have the . . . effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations.'" 733 F.3d at 423 (citing *In re Madoff Sec.,* 654 F.3d 229, 23 (2d Cir. 2011) (the "*Second Circuit Net Equity Decision*")).[6]

Finally, Mr. Cohen asserts that "fraud does not automatically void a fraudulent broker's obligations; it merely gives [him], as an innocent customer, the option to void any agreement." (Cohen Br. at 16).[7] However, this Court already examined this issue closely and concluded that "courts often permit innocent plaintiffs to enforce contracts that are against public policy, but here, such enforcement would further none of the policies generally favoring enforcement by an innocent party to an illegal bargain" because "any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme." *Omnibus Good Faith Decision,* 531 B.R. 463 (citing *Janvey v. Brown*, 767 F.3d 430 (5th Cir.2014) (internal quotations

---

[6] The four cases cited by Mr. Cohen, in contrast, involve enforceable agreements related to the exchange of actual goods and services, as opposed to fraudulent statements generated as part of a Ponzi scheme. *See e.g., In re Central Illinois*, 526 B.R. 786 (Bankr. C.D. Ill. 2015) (obligations relating to agreement to pay for construction work to make grain handling facility operational); *In re All-Type Printing, Inc.*, 274 B.R. 316 (Bankr. D. Conn. 2002) (obligations relating to retirement agreement with shareholder); *In re HDD Rotary Sales, LLC*, 512 B.R. 877 (Bankr. S.D. Tex. 2014) (obligations relating to loan transaction, promises of annual bonus to shareholder/employee); *In re National Gas Distribs., LLC*, 412 B.R. 758 (Bankr. E.D.N.C. 2009) (obligations relating to contractual agreement to deliver gas to former customer).

[7] Mr. Cohen cites to five cases in support of this proposition, but four of those cases do not involve the conveyance of fictitious profits in Ponzi schemes. The fifth case cited is *Picard v. JPMorgan Chase, & Co.,* 721 F.3d 54, 63 (2d Cir. 2013), which is equally inapplicable here. In *JP Morgan*, the Second Circuit concluded that the Trustee's common law claims asserted on behalf of BLMIS were barred by the doctrine of *in pari delicto,* a distinction that has already been addressed in the Trustee's Proposed Conclusions of Law filed on November 12, 2015 (ECF No. 71).

omitted).  Moreover, any valid claim for damages would be recoverable only from the general estate because to allow defendants like Mr. Cohen "to retain profits paid out of customer property . . .would conflict with the priority system established under SIPA by equating net equity and general creditor claims." *Antecedent Debt Decision*, 499 B.R. at 423 (quoting *Greiff*, 476 B.R. at 727-28).  Mr. Cohen's assertions regarding obligations are unsustainable.

      **B.**      **Mr. Cohen's Purported Federal and State Law Claims Do Not Constitute Value Under Section 548(c)**

            **1.**   **Federal and State Law Securities Claims Do Not Satisfy Any Antecedent Debt**

Mr. Cohen argues that he has claims for federal securities violations under 15 U.S.C. § 77l(a)(2) and 15 U.S.C. § 78cc(b), as well as claims for fraud and breach of fiduciary duty under New York state law (Cohen Br. at 17-21), however, both this Court and the District Court already decided that "such claims cannot provide value as against the Madoff Securities customer property estate under SIPA." *Antecedent Debt Decision,* 499 B.R. at 422 n. 6.  This Court specifically highlighted the District Court's two prior decisions, which determined that federal and state law claims cannot be based on "fictitious account statements[, which] were invalid and unenforceable." *Omnibus Good Faith Decision,* 531 B.R. at 462 (citing *Antecedent Debt Decision,* 499 B.R. at 421 n. 4 and *Greiff*, 476 B.R. at 724–25).  This conclusion is "consistent with the well-settled rule in Ponzi scheme cases that net winners must disgorge their winnings." *Id.* at 462.  "[I]nvestors may retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments, while distributions exceeding their investments constitute fraudulent conveyances which may be recovered by the Trustee." *Id.* citing *Balaber–Strauss v. Sixty–Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 682 (Bankr.S.D.N.Y.2000), aff'd, 264 B.R. 303 (S.D.N.Y.2001).

## 2. Taxes May Not Be Considered As Part of Value Calculation

This Court has already concluded that considering taxes paid on fictitious gains when determining value under Section 548(c) would be inconsistent with the approved manner for calculating net equity when it stated that "the withdrawal of the money to pay taxes the Defendants never should have had to pay is not a defense to the fraudulent transfer claims." *Picard v. The Estate (Succession) of Doris Igoin (In re Madoff Sec.)*, 525 B.R. 871, 893 (Bankr. S.D.N.Y. 2015) (citing *Donell v. Kowell,* 533 F.3d at 778–79).

In fact, courts routinely "decline to permit good faith investors to claim offsets for taxes or other expenses paid in connection with receipt and management of income from a Ponzi scheme." *Donell,* 533 F.3d at 779 (noting that "[t]here is simply no principle by which to limit such offsets; one could argue that every purchase made with the gains from the scheme would not have been made 'but for' receipt of that money. If each net winner could shield his gains in their entirety in this manner . . . the multitude of victims who lost their entire investment would receive no recovery."); *see also In re Hedged-Invs. Assocs., Inc*., 84 F.3d 1286, 1290 (10th Cir. 1996) (declining to allow investor to recover tax and interest payments paid out of Ponzi scheme investment, stating that "[a]ny recovery would not come from the debtors' own assets because they had no assets they could legitimately call their own. Rather, any award of damages would have to be paid out of money rightfully belonging to other victims of the Ponzi scheme.")

Mr. Cohen is "in the same position as many other Madoff victims who paid taxes on fictitious profits, and then were sued by the Trustee as net winners," and he is not entitled, as a matter of law, to use as a value defense any taxes that he might have paid in connection with his BLMIS account. *Igoin,* 525 B.R. at 885 n. 16.

## 3. Mr. Cohen Is Not Entitled to 9% Interest on his New York State Claims

Mr. Cohen further asserts that he is entitled to damages under New York's C.P.L.R. §

5001, otherwise known as New York's 9% prejudgment interest statute, running from the date of each of his deposits. That statute, however, authorizes interest only "upon a sum awarded," which requires a judgment in favor of a claimant. *See In re Bayou Group, LLC*, 439 B.R. at 337-38. There is no judgment in favor of Mr. Cohen in this or any other proceeding to which prejudgment interest could attach. In any event, as discussed below, attributing any value to an interest claim is inconsistent with the Second Circuit's ruling on time-based damages. *In re Madoff Sec.*, 496 B.R. 744, 761 (Bankr. S.D.N.Y. 2013), *aff'd sub nom.* 779 F.3d 74, 81 (2d Cir. 2015) ("*Time-Based Damages Decision*") (holding that a customer's net equity calculation should not be adjusted to account for time-based damages such as inflation or interest).

### 4. Mr. Cohen's Lost Opportunities And Legal Fees Do Not Constitute Consequential Damages That Create Value

Mr. Cohen's contention that his lost opportunities and legal fees, purportedly recoverable as consequential damages of BLMIS's fraud and breach of fiduciary duty, constitute value also fails. (Cohen Br. at 20-22). Courts in New York have rejected similar claims for "lost" fictitious profits from the Madoff Ponzi scheme in other contexts, because a claimant like Mr. Cohen "cannot lose something that never existed." *Omnibus Good Faith Decision*, 531 B.R. at 464. Since "it is undisputed that the profits reported by Madoff were completely imaginary[,] [t]he fictitious profits never existed, and thus [Mr. Cohen] did not suffer any loss with respect to the fictitious sum." *Id.* (quoting *Hecht v. Andover Assocs. Mgmt. Corp.,* 114 A.D. 3d 638, 653 (N.Y. App. Div. 2014)).[8] As a result, such "lost" profits "are not recoverable as an element of damages" under state law. *Id.* at 465.

---

[8] *See also Omnibus Good Faith Decision,* 531 B.R. at 464 citing *Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 102 A.D.3d 223, 234 (N.Y. App. Div. 2012) (involving insurance claim arising out of BLMIS Ponzi scheme and noting "it is not reasonable to claim that the revelation that an asset, once thought to exist, did not exist, constitutes a 'loss,' whether for the purpose of a claim under SIPA or under a fidelity bond."); *Horowitz v. Am.*

- 13 -

Moreover, the District Court already ruled that to the extent that Mr. Cohen's damages claim "allow[s] [him] to withhold funds beyond [his] net-equity share of customer property," he is "making those damages claims against the customer property estate" and "allowing such claims to be drawn out of the customer property estate would violate SIPA. It is for this reason that only a defendant's investment of principal may count as 'value' with respect to the customer property estate for purposes of section 548(c)." *Antecedent Debt Decision,* 499 B.R. at 424 (citing *Greiff*, 476 B.R. at 728 ("[W]hen determining whether a transferee provides value, SIPA requires consideration not only of whether the transfer diminishes the resources available for creditors generally, but also whether it depletes the resources available for the satisfaction of customers' net equity claims and other priority claims.")).[9]

There is simply "no support" for Mr. Cohen's arguments that he could "recover fictitious profits" as a matter of federal or state law or his "related argument that the payment of fictitious profits satisfied an antecedent debt." *Omnibus Good Faith Decision,* 531 B.R. at 465.

### C. The Time Value Of Money Is Not Part of the Principal Calculation

In the time-based damages proceedings, this Court and the Second Circuit confirmed that the Trustee was not permitted under SIPA to make adjustments to customer claims to account for any form of time-based damages, including those relating to lost opportunity costs or the consumer price index ("CPI"). *See Time-Based Damages Decision*, 779 F.3d at 81 ("An inflation adjustment to net equity claims" will only favor certain investors who have already recovered their principal investments "at the expense of customers who have not yet recovered

---

*Int'l Group, Inc.*, No. 09 Civ. 7312 (PAC), 2010 WL 3825737, at *7 (S.D.N.Y. Sept. 30, 2010), aff'd, 498 Fed.Appx. 51 (2d Cir.2012) (same, noting that the fictitious profits were not lost through fraud; the plaintiffs "did not lose this money; they lost the mistaken belief that they owned this money.").

[9] Mr. Cohen has abandoned his claims that he is entitled to actual reimbursement of legal fees incurred in the present litigation pursuant to the wrongful act doctrine. *See* Trial Transcript at 12:5-12; 19:12-17.

the property they placed in Madoff's hands.").

While Mr. Cohen did not participate in the time-based damages proceedings, he did participate in the briefings relating to the *Antecedent Debt Decision,* in which he, among other defendants, argued that he should be compensated for the time value of money and is entitled to a purported "revaluation of his principal pursuant to the CPI index." [10] (Cohen Br. at 22). While the District Court declined to address such arguments because it did not withdraw the reference with respect to that question,[11] it did make clear that the calculation of net equity is the same in the context of determination of both the amount of a customer claim or an avoidance liability, stating that "a customer's net equity and the amounts sought in avoidance and recovery proceedings (assuming the customer's good faith) are two sides of the same coin." *Antecedent Debt Decision,* 499 B.R. at 420; *see also* Transcript of Hearing Re: Fishman Trusts' Motion for Hearing to Determine Allowance of Claims, at 50:23-51:1, *In re Madoff Sec.*, Adv. Pro. No. 08-01789 (SMB) (Bankr. S.D.N.Y. May 20, 2014) (affirming the Trustee's net equity calculations in disallowing certain customer claims, noting that "[a]lthough Judge Rakoff was considering the concept of value under Bankruptcy Code Section 548(c), his reasoning applies equally to this case"). Thus, there can be no adjustment to the value of Mr. Cohen's principal based on the passage of time.

### D. Section 550(e) Is Not Relevant To This Proceeding

Mr. Cohen's argument that he is entitled to setoff under section 550(e) of the Bankruptcy

---

[10] *See* Consolidated Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues on Behalf of Withdrawal Defendants As Ordered By The Court on May 12, 2012, at 6-10, *In re Madoff Sec.,* No. 12 MC 00115 (JSR) (S.D.N.Y. June 25, 2012), ECF No. 199 (Defendants, including Mr. Cohen, argued that they were entitled to interest in addition to principal, and that their net-equity interests require an adjustment for the loss of time value of money.).

[11] *See Antecedent Debt Decision,* 499 B.R. at 422, n. 5 (citing *Greiff,* 476 B.R. at 727, n.10).

Code for taxes paid on transfers from BLMIS is simply incorrect. The purpose of section 550 is to allow a trustee to recover the full value of an avoided transfer. *See In re Centennial Textiles, Inc.*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998) ("Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.") (citing *Morris v. Kansas Drywall Supply Co., Inc. (In re Classic Drywall, Inc.),* 127 B.R. 874, 876 (D.Kan.1991)). Section 550(e) creates a lien in favor of a good faith transferee up to the value of certain improvements made to property after its transfer by the debtor, which "makes sense from an equitable perspective because § 550 is intended to return the debtor to the position it would have been had the transfer not occurred—not to return it to a better position." *In re Consol. Yacht Corp.*, 337 B.R. 711, 714 (Bankr. S.D. Fla. 2006). In short, the purpose of section 550(e) is to prevent a windfall to the estate. *In re Interstate Cigar Co., Inc.*, 285 B.R. 789, 796 (Bankr, E.D.N.Y. 2002) (citing 5 Collier on Bankruptcy ¶ 550.06 (15th ed. 2002)).

Mr. Cohen's purported "improvements" did not increase the value of the property transferred from BLMIS from the estate's perspective. Section 550(e) primarily applies in instances where good faith purchasers made mortgage payments or made other improvements to real or personal property. *See, e.g., In re Crawford*, 454 B.R. 262 (E.D. Mass. 2011). For there to be an "improvement," the party seeking the lien must demonstrate that the action taken increased the value of the property transferred. *In re Lepelley*, 233 B.R. 802, 808 (Bankr. N.D. Ohio 1999) (citing *Chrystler v. Mersman Tables, Inc. (Matter of Furniture Den, Inc.),* 12 B.R. 522, 527 (Bankr. W.D. Mich. 1981)). Any increase in the value of the property is to be determined from the point of view of the trustee and the bankruptcy estate. *Id.* Here, where payment of taxes by Mr. Cohen on his transfers did nothing to improve the value of the transfers

from the estate's perspective, section 550(e) simply has no application.[12]

### E. There Is No Basis To Treat Equity Investors and Creditors Differently[13]

Finally, Mr. Cohen observes that the *Antecedent Debt Decision* and other prior decisions rely on certain cases that involved equity investments as opposed to the securities/brokerage context. (Cohen Br. at 23). However, Mr. Cohen cites no legal authority or public policy rationale for treating equity investors and creditors differently. As the District Court noted, the distinction between equity investors and creditors "in the immediate context . . . is a distinction without a difference" because defendants "faced the same risks as equity investors." *Greiff,* 476 B.R. at 726. Specifically, the District Court stated:

> Any entitlement defendants had to a return on their investment, then, depended on a representation that Madoff Securities had in fact generated a profit. The complaints allege that Madoff Securities' representations in this regard were wholly fraudulent. Thus, defendants, in effect, ask the Court to enforce the fraud on the ground that the vehicle of this particular Ponzi scheme, in contrast to others, styled itself as a stockbroker. Such a distinction pays only lip service to the underlying realities of the Ponzi scheme, and the Court rejects it.

*Id.* at 726.

Even so, Mr. Cohen argues that "more relevant precedent" is found in an unreported case, in which defrauded investors recovered the amounts reflected on fraudulent brokerage statements. (Cohen Br. at 23) (citing *Visconsi v. Lehman Bros., Inc.,* 244 Fed.Appx. 708, 713–14 (6th Cir.2007)). However, the District Court already distinguished *Visconsi* "in three

---

[12] The sole case relied upon by Mr. Cohen is inapposite. In *In re Keeley & Grabanski Land P'ship*, 531 B.R. 771 (8th Cir. BAP 2015), a good faith transferee paid property taxes on real property and planted crops on the property. Because these improvements provided value to the estate by, for example avoiding tax arrears that would ultimately have to be satisfied by the estate, section 550(e) was applicable. Here, where the income taxes paid had no benefit to the estate, there is no improvement for purposes of section 550(e).

[13] Mr. Cohen has waived this added contention, given that it was not included in the Second Revised Joint Pretrial Order. *See supra* n. 5.

- 17 -


important respects." *Id.* at 725. First, the account statements in *Visconsi* tracked the defendants' funds as if they had been properly invested. *Id.* Here, there is "no reliable basis on which to determine how defendants would have benefited from their bargains with Madoff Securities." *Id.* Second, unlike in *Visconsi* where the defendant was a more culpable party, the District Court "consider[ed] the defendants relative to other investors, many of whom were equally innocent." *Id.* at 725-26. Last, *Visconsi* focused on the "harm suffered" by the investors, rather than their status as creditors. *Id.* at 726 (citing *Visconsi*, 244 F. App'x at 713). As the District Court noted, the defendants have not shown that their harm "in any way corresponds to the amounts reflected on the customer statements." *Id.* Accordingly, the District Court saw "no reason to depart from the general rule that investors in a Ponzi scheme did not receive their profits 'for value.'" *Id.*

## CONCLUSION

Each of the legal contentions raised by Mr. Cohen in an attempt to decrease or eliminate his liability to the Trustee fails as a matter of law. The Trustee respectfully request that this Court adopt the findings of fact proposed by the Trustee and report and recommend to the District Court that an order be entered avoiding the transfers sought by the Trustee and granting judgment in favor of the Trustee against Mr. Cohen in the amount of $1,143,461.

Dated: December 30, 2015  
       New York, New York

**BAKER & HOSTETLER LLP**

By: /s/ *Nicholas J. Cremona*  
45 Rockefeller Plaza  
New York, New York 10111  
Telephone: 212.589.4200  
Facsimile: 212.589.4201  
David J. Sheehan  
Email: dsheehan@bakerlaw.com  
Nicholas J. Cremona  
Email: ncremona@bakerlaw.com  
Keith R. Murphy  
Email: kmurphy@bakerlaw.com

Ona T. Wang
Email: owang@bakerlaw.com
Torello H. Calvani
Email: tcalvani@bakerlaw.com

and

1900 East Ninth Street
Cleveland, Ohio 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740
James H. Rollinson
Email: jrollinson@bakerlaw.com

*Attorneys for Plaintiff Irving H. Picard, Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC and the consolidated estate of Bernard L. Madoff*