Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
 4   In the Matter of:
 5
 6   SECURITIES INVESTOR PROTECTION
 7   CORPORATION,                        Case No. 08-01789 (SMB)
 8
 9           Debtor.
10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
11   IRVING H. PICARD, TRUSTEE FOR
12   THE LIQUIDATION of BERNARD L.
13   MADOFF INVESTMENT SECURITIES
14   LLC,
15             Plaintiff,
16   v.                                  Adv. Case No. 10-04311 (SMB)
17   COHEN,
18             Defendants.
19   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
20               U.S. Bankruptcy Court
21               One Bowling Green
22               New York, NY 10004-1408
23
24               June 2, 2015
25               10:08 AM
```

1  B E F O R E :

2  HON STUART M. BERNSTEIN

3  U.S. BANKRUPTCY JUDGE

4

5  Hearing re:   Pretrial Conference

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:   Nicole Yawn

```
 1   A P P E A R A N C E S :
 2   BAKER HOSTETLER
 3        Attorneys for Irving Picard, as trustee
 4        45 Rockefeller Plaza
 5        New York, NY 10111
 6
 7   BY:  NICHOLAS J. CREMONA, ESQ.
 8        JAMES H. ROLLINSON, ESQ.
 9        ONA THERESA WANG, ESQ.
10
11   LEWIS & MCKENNA
12        Attorney for Andrew Cohen
13        521 Fifth Avenue
14        33rd Floor
15        New York, NY 10175
16
17   BY:  PAUL Z. LEWIS, ESQ.
18
19
20
21
22
23
24
25
```

1  P R O C E E D I N G S
2  THE COURT: Please be seated.
3  Madoff?
4  Go ahead.
5  MR. CREMONA: Good morning, Your Honor. Nicholas
6  Cremona, of BakerHostetler, appearing on behalf of Irving
7  Picard, as trustee. I have with me my colleague, Jamie
8  Rollinson and Ona Wang.
9  THE COURT: Okay.
10  MR. CREMONA: In the first instance, Your Honor,
11  we thank you for accommodating us on a non-Madoff omnibus
12  hearing date. We appreciate that. We tried hard to get on
13  one of the omnibus dates, but we were unable to do so.
14  Your Honor, we're here this morning to discuss how
15  to proceed on one of our, as we have called, innocent
16  investor fictitious profits cases. This is a case that
17  involves only transfers within the two years prior to the
18  filing date and which the trustee seeks to avoid, only
19  pursuant to Section 548(a)(1)(a) of the Bankruptcy Code. So
20  Section 546(e) is not implicated, and there were no other
21  impediments to bringing this matter to trial at this point
22  in time.
23  THE COURT: Is discovery complete?
24  MR. CREMONA: It is. I was going to go through
25  the timeline for background, if Your Honor would like. You

1   know, the timing is as follows.

2          The complaint was filed in November of 2010.  The

3   defendants answered the complaint and asserted a

4   counterclaim on June 13th, 2011.  As Your Honor indicated,

5   the discovery was fully completed October 14, 2014, and the

6   matter was then set for mediation, pursuant to the

7   litigation procedures order.

8          That mediation took place with Chief Costa as the

9   mediator on March 10th of this year.  Unfortunately, the

10  mediation was unsuccessful, and Mr. Costa filed his final

11  report indicating that the mediation was a failure on

12  March 12th.

13         As I indicated or as the trustee indicated in his

14  notice setting this for a pretrial, we're required, pursuant

15  to, I believe, Section 7 of the Avoidance Procedures

16  attached to the litigation procedures order, which require a

17  trustee and a defendant to appear before Your Honor at the

18  next available omnibus hearing date.  As I said, we'd been

19  trying to coordinate to do that, and we are here now today

20  to discuss moving forward with trial.

21         We did confer with defense counsel and internally,

22  and we have offered some dates.  We haven't reached

23  agreement, but we, I think, have some principal timeframe

24  that we agreed upon as possible, which would be --

25         THE COURT:  What's that?

1                MR. CREMONA:  The trustee is available to move
2    forward with trial any time in October 1 through
3    October 14th.  We view this as a one to two-day trial.
4                I think we've discussed this with Your Honor.
5    We've had some of these that have gotten to the precipice
6    and then settled.
7                We would put forth the trustee's three experts
8    that we've discussed, and again, we view this as a one to
9    two-day trial.  Hopefully, Mr. Cohen and his counsel can
10   make themselves available some time during that period so
11   that we can move this matter forward.
12               THE COURT:  Okay.
13               MR. CREMONA:  Thank you.
14               MR. LEWIS:  Your Honor, Paul Lewis, Lewis &
15   McKenna.  I represent Andrew Cohen, one of the defendants.
16               My understanding is that there was something like
17   600 cases that went up to Judge Rakoff for a determination
18   on the antecedent debt question, which seems to be the sole
19   remaining issue in this matter.  That's why we are here.
20   The reference was more or less reinstated as a result of
21   that Judge Rakoff decision.
22               THE COURT:  I understand.  Why are you still here?
23   What is the open issue?
24               MR. LEWIS:  Pardon me?
25               THE COURT:  What is the issue?

1        MR. LEWIS:  Antecedent debt.

2        THE COURT:  Didn't Judge Rakoff decide that?

3        MR. LEWIS:  He did, and we will have to go through

4   the trial and provide offers of proof so that this case can

5   be taken all the way to the Second Circuit.

6        THE COURT:  Well, why don't you just enter into a

7   stipulation of facts and try the case on stipulated facts?

8   (Indiscernible) I'll enter a judgment.

9        MR. LEWIS:  We have also demanded a jury,

10  Your Honor.

11       THE COURT:  Okay.  You've demanded a jury.  All

12  right.

13       MR. LEWIS:  So under those circumstances, we think

14  we are entitled to go forward and have that determination

15  made.  There are offsets to the amounts that they're seeking

16  to recover.

17       THE COURT:  What are the offsets?

18       MR. LEWIS:  Taxes.

19       THE COURT:  What's that offset?

20       MR. LEWIS:  Well, I don't think it's been decided

21  by the district court or the Second Circuit.

22       THE COURT:  Well, how is that an offset?

23       MR. LEWIS:  It's an offset.  It's an offset under

24  New York law.

25       THE COURT:  You're not going to get an offset in a

1    14(p)(9) (ph) --

2              MR. LEWIS:  Pardon me?

3              THE COURT:  There's no offset in a 14(p)(9)

4    section.

5              MR. LEWIS:  There can be, and there have been.

6              THE COURT:  Well, why don't we do this?  Why don't

7    you -- maybe it makes sense to just -- if there's no dispute

8    in terms of what the transactions were -- in other words,

9    that, within the two years the defendant got whatever it

10   was, $1.1 million in excess of what he deposited and that's

11   not disputed, then the motion can be -- then the matter can

12   be disposed of on a motion because it's a legal issue

13   regarding the antecedent indebtedness.

14             MR. CREMONA:  Your Honor, the only thing I would

15   add to that is, as we stand here today, the defendant has

16   denied that they received all of the transfers --

17             THE COURT:  Oh.

18             MR. CREMONA:  -- and disputed the amounts in the

19   answer and through responses in discovery.  And even through

20   mediation in that session, the defendant specifically raised

21   certain transfers, you know, without getting into the

22   specifics.  So my understanding was that there are material

23   issues of fact at dispute.

24             THE COURT:  Okay.  What about the demand for a

25   jury trial?  How do you deal with that?

```
 1                MR. CREMONA:  This is the first that that's been
 2   raised as a material issue.  I know the --
 3                THE COURT:  It's in the answer.
 4                MR. CREMONA:  It is.  I understand.  I am aware of
 5   that, and I noticed that.  I mean, I also am aware that the
 6   local rules provide that the parties could consent to have a
 7   jury trial here before Your Honor.  We did not discuss that
 8   as a potential option.
 9                THE COURT:  What's the status -- did the defendant
10   file a proof of claim?
11                MR. CREMONA:  The defendant did file a proof of
12   claim.
13                MR. LEWIS:  No.
14                MR. CREMONA:  That --
15                THE COURT:  What's the status of the proof?
16                MR. CREMONA:  It was denied.  No objection was
17   filed.  However, the defendant also asserted a counterclaim
18   --
19                THE COURT:  Right.
20                MR. CREMONA:  -- for those very same issues.
21                THE COURT:  Okay.
22                MR. CREMONA:  Which I would submit to Your Honor
23   that is part and parcel of the adversary, and the adversary
24   can't be resolved without the resolution of that
25   counterclaim.
```

```
 1              THE COURT:  So don't I have to decide whether or
 2   not your client received a fraudulent transfer before I can
 3   consider whether or not you have a claim?  Because you would
 4   have to return the fraudulent transfer before you could
 5   allow the claims.
 6              MR. LEWIS:  Well, I think that has been admitted,
 7   basically, by the trustee.
 8              THE COURT:  What's been admitted?
 9              MR. LEWIS:  That there was fraudulent conveyance,
10   that this was a fraud at the time the money was put in.
11              THE COURT:  Yeah, but what's --
12              MR. LEWIS:  There was a fraud being committed,
13   Your Honor.
14              THE COURT:  You asserted it a counterclaim, right?
15              MR. LEWIS:  Yes.
16              THE COURT:  Okay.  But your counterclaim can't be
17   allowed, even if it's valid, unless and until you return the
18   fraudulent transfer.  That's what the bankruptcy code
19   provides.
20              So I have to determine whether or not you received
21   the fraudulent transfer in order to determine whether or not
22   to even allow the counterclaim.  Even your counterclaim
23   succeeded on the merits -- and I'm not saying it necessary
24   succeeds on the merits -- it sounds to me like I have to
25   make a determination regarding whether or not you received a
```

1   fraudulent transfer as part and parcel of the determination

2   whether or not you have an allowed claim, which you've

3   asserted in your counterclaim.

4          So what I will do is I will schedule a trial.  If

5   you feel differently, you can make a motion to withdraw the

6   reference for the jury trial, but that's my reaction to it.

7          MR. LEWIS:  Yes, Your Honor.  No, there's another

8   aspect of this, Your Honor.

9          THE COURT:  What's that?

10         MR. LEWIS:  It appears to me that we are the first

11  trial to ever take --

12         THE COURT:  That's right.

13         MR. LEWIS:  -- place in Madoff.

14         THE COURT:  That's right.

15         MR. LEWIS:  Why we have been singled out is beyond

16  me.

17         THE COURT:  But you're ready (ph).

18         MR. LEWIS:  But I -- yeah, I really feel honored

19  by that, but --

20         THE COURT:  Well, it's just a two-year transfer

21  case.  You're an innocent investor.  So there's no bad faith

22  issue.

23         MR. LEWIS:  Well, there's issues that are going to

24  go up to the Second Circuit.

25         THE COURT:  Right, but I have to enter a judgment

```
 1   before they can go up to the Second Circuit.
 2             MR. LEWIS:  So we are the pathfinder?  Our
 3   decision is going to be -- I mean, all the other decisions
 4   that have been made have been done on a collective basis
 5   with regard to the two-year and with regard to the equity,
 6   with regard to the antecedent debt.  And now, we have
 7   something like 600 other cases.
 8             THE COURT:  I hear you, but somebody's got to be
 9   first.
10             MR. LEWIS:  I understand that.
11             THE COURT:  And it's you.
12             MR. LEWIS:  Do we go to the Second Circuit, or do
13   we wait for a decision on a collective basis?
14             THE COURT:  I can't give you legal advice, but I
15   will try this case.  And then, you'll have to decide --
16   assuming the judgment is adverse, you'll have to decide what
17   to do.
18             MR. LEWIS:  I understand.
19             THE COURT:  All right.  Why don't you give me a
20   final pretrial order by June 30th?  When are you going to
21   file your expert reports?
22             MR. CREMONA:  We've already exchanged reports,
23   Your Honor.
24             THE COURT:  Oh, okay.  Okay.
25             MR. CREMONA:  Expert discovery is closed.
```

```
 1              THE COURT:  File a pretrial order is June 30.
 2    Final pretrial temper (ph) is July 16th at 10:00.
 3              How is that October date, Mr. Lewis?
 4              MR. LEWIS:  Well, I'm trying to find out.  I think
 5    sometime in mid-October would be all right.  I'm trying to
 6    get the exact date.  Mr. Cohen is a teacher.  That's the
 7    only job he could ever get.
 8              THE COURT:  Right.
 9              MR. LEWIS:  And he may have some time off during
10    that period of time.
11              THE COURT:  He's going to have to deal with it.
12              MR. LEWIS:  And I think the 12th -- I don't know
13    whether --
14              THE COURT:  That's Columbus Day.
15              MR. LEWIS:  13th?
16              THE COURT:  How about October the 5th?  It's a
17    Monday.
18              MR. LEWIS:  He cannot do it then.
19              THE COURT:  All right.
20              MR. LEWIS:  I know he cannot do it then.
21              THE COURT:  All right.
22              MR. LEWIS:  He lives down in South Virginia.
23              THE COURT:  All right.  Well, it sounds to me
24    like, unless I do it in the middle of the summer -- and I
25    don't know what he does for the summer -- no three-day block
```

1  is going to be convenient.

2          MR. LEWIS:  Yeah, I can't do it then.

3          THE COURT:  All right.  We'll start the trial

4  October 14.  The 14, 15, and 16 we'll clear.  Trial begins

5  October 14th, 10:00.

6          Yeah, let me ask you a question.  Your experts are

7  basically going to testify what they saw in the books and

8  records?

9          MR. CREMONA:  Right, Your Honor.

10          THE COURT:  So does it make sense to have them

11  give their direct testimony by declaration?

12          MR. CREMONA:  We would certainly be amenable to

13  that, if Your Honor would --

14          THE COURT:  Does that make sense?

15          MR. CREMONA:  -- find that acceptable.

16          MR. LEWIS:  Yeah, I'm really not sure what the

17  differences are.

18          THE COURT:  In other words, he will put in

19  essentially an affidavit before the trial, which will be his

20  direct testimony.  And then, you'll have the opportunity

21  either to object to what's in there on any evidentiary

22  grounds and to also cross-examine the witness, who will be

23  present.

24          MR. LEWIS:  That's fine.

25          THE COURT:  But it'll speed it up a little bit.

1   And I suspect that the testimony is simply going to be that

2   he looked at the books and records of the BLMIS, and this is

3   what he found.

4           MR. LEWIS:  That's fine, Your Honor.

5           MR. CREMONA:  Your Honor?

6           THE COURT:  Yes?

7           MR. CREMONA:  I apologize for the problem with the

8   schedule.  One of our experts is not available on 10/15

9   through 10/16, which is why I said any time through 10/14.

10          THE COURT:  So why don't you do him first?

11          MR. CREMONA:  What's that?

12          THE COURT:  Why don't you just do him first?

13          MR. CREMONA:  Okay.  I just wanted to raise it.

14          THE COURT:  Take him (indiscernible).

15          MR. CREMONA:  Yep, that's fine.

16          THE COURT:  All right.  Experts will do their

17  direct testimony by declaration or affidavit.  And make sure

18  that Mr. Lewis has the affidavits at least a week before the

19  trial.  And obviously, they have to be here to be cross-

20  examined.

21          Okay.  See you then.

22          MR. CREMONA:  Thank you very much, Your Honor.

23          THE COURT:  Thank you.

24          MR. LEWIS:  Thank you, Your Honor.

25      (Whereupon these proceedings were concluded at 10:22

1   AM)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1           C E R T I F I C A T I O N

2

3   I, Nicole Yawn certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5   **Nicole Yawn**  Digitally signed by Nicole Yawn
     DN: cn=Nicole Yawn, o=Veritext, ou,
     email=digital@veritext.com, c=US
6   _____  Date: 2015.06.03 13:57:08 -04'00'

7   Nicole Yawn

8

9

10

11

12  Date:   June 3, 2015

13

14

15

16

17

18

19

20

21

22  Veritext Legal Solutions

23  330 Old Country Road

24  Suite 300

25  Mineola, NY 11501